**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DREBEST PTE LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25-cv-03094 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| INK & RAGS LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff DreBest PTE Ltd. ("DreBest"), a company registered in Singapore and based in Vietnam, describes itself as "an e-commerce business incubator" that helps clients develop internet stores and sell products through those stores. In a previous lawsuit, Defendant Ink & Rags, LLC ("Ink & Rags") sued numerous online retailers for trademark infringement. Pursuant to an injunction in that litigation, Defendant PayPal, Inc. ("PayPal") froze financial accounts it deemed "connected to" the alleged infringers. DreBest, although not a defendant itself, was impacted by the asset freeze because two of its clients were defendants. After DreBest appeared before the district court and requested that the restraint be lifted, Ink & Rags, through its lawyers, Defendant Revision Legal, PLLC ("Revision Legal"), opposed the request and allegedly used the restraint to pressure DreBest in settlement negotiations. According to DreBest, the restraint crippled its business. Thus, DreBest brought suit alleging that Ink & Rags, Revision Legal, and PayPal committed several torts by wrongfully restraining its account. Shortly after this case was removed from the Circuit Court of Cook County, DreBest voluntarily dismissed PayPal as a defendant. Now before the Court is the motion to dismiss filed by Ink & Rags and Revision Legal pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 15.) For the reasons that follow, that motion is granted.

## BACKGROUND

DreBest's claims arise out of a case litigated before another judge in the Northern District of Illinois, *Ink & Rags, LLC v. The Partnerships and Unincorporated Associations Identified on Schedule A*, Case No. 22-cv-07292 (N.D. Ill.) (the "Infringement Case"). This Court begins by summarizing the relevant proceedings in the Infringement Case. In doing so, the Court relies on the allegations in DreBest's Second Amended Complaint ("SAC," Dkt. No. 1-1) as well as filings in the Infringement Case. *See Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016); *see also Cagan v. Intervest Midwest Real Estate Corp*., 774 F. Supp. 1089, 1093 (N.D. Ill. 1991) (judicial notice of a court order in another case is proper); *see also Burnett v. Ocwen Loan Servicing*, LLC, No. 17-cv-03474, 2017 WL 5171226, at *2 (N.D. Ill. Nov. 8, 2017) (taking judicial notice of docket entries).[1] The Court accepts all well-pleaded factual allegations in the SAC as true and draws all reasonable inferences from those facts in DreBest's favor as the non-moving party. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

### I. The Infringement Case

In December 2022, Ink & Rags commenced the Infringement Case, a trademark infringement suit against 19 online retailers that allegedly sold products infringing Ink & Rags's

[1] Defendants' motion to dismiss cites filings from the Infringement Case. In response, DreBest argues that Defendants' reliance upon those filings requires the motion to be converted into one for summary judgment. DreBest therefore attached a "Rule 56 Statement of Contested Facts" to its response to the motion to dismiss. (Dkt. No. 31.) Defendants oppose conversion of the motion. At a hearing on August 7, 2025, the Court determined that it would not convert the motion but would consider DreBest's statement of contested facts as a supplement to DreBest's response brief. (8/7/2025 Order, Dkt. No. 35.) As discussed above, a court may take judicial notice of proceedings in other cases in connection with a motion to dismiss. Moreover, the SAC itself references filings in the Infringement Case. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (explaining that courts may consider materials attached to a motion to dismiss without converting the motion if those materials are "referred to in the plaintiff's complaint and are central to his claim" (emphasis omitted)).

trademarks. (SAC at 3, ¶¶ 13–15.)[2] Those 19 defendants were listed in Schedule A to the complaint. DreBest was not a defendant. (*Id.* at 3, ¶ 16.) In January 2023, the district court granted Ink & Rags an *ex parte* temporary restraining order ("TRO"). The TRO directed PayPal and other financial account providers to temporarily restrain the 19 defendants' assets. (*Id.* at 3, ¶ 19.) According to the TRO's terms, "PayPal" was directed to "[l]ocate all accounts and funds connected to Defendants" and "[r]estrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendants' assets until further [court] order." TRO ¶ 7, Infringement Case, Dkt. No. 21. On February 6, 2023, Ink & Rags served the TRO on PayPal. (SAC at 3–4, ¶ 22.) On February 7, 2023, the district court entered a preliminary injunction extending the asset restraint and other relief granted in the TRO. *See* Preliminary Injunction, Infringement Case, Dkt. No. 30.

In implementing the asset restraint, PayPal determined that DreBest's PayPal account was connected to two defendants, Coolerprint.com ("Coolerprint") and Cozysign.com ("Cozysign"). *See* Order Granting in Part and Denying in Part Non-Party DreBest's Motion for Declaratory Judgment at 1, Infringement Case, Dkt. No. 79. PayPal therefore froze DreBest's account, which contained roughly $1,000,000. (SAC at 4, ¶ 28.) This amount "dwarfed the combined balances of the actual Defendants named in the . . . Infringement Case." (*Id.*) On February 18, 2023, Ink & Rags "sent an email to DreBest President, Mr. Hung Vu, informing him that PayPal had restricted the Account because of Ink & Rags' actions taken in District Court." (*Id.* at 4, ¶ 24.) On multiple occasions thereafter, Vu informed Ink & Rags and Revision Legal it was not a defendant in the Infringement Case and did not use the Ink & Rags trademark.

---

[2] Because the SAC's paragraph numbering resets in each section, the Court includes both the page number and the paragraph number when citing the SAC in this opinion.

(*Id.* at 4, ¶ 26.) Revision Legal repeatedly responded that DreBest should contact an attorney. (*Id.* at 4, ¶ 27.)[3]

On February 23, 2023, Coolerprint and Cozysign filed a motion to dismiss Ink & Rags's complaint and to dissolve the preliminary injunction. Infringement Case, Dkt. No. 35. The motion included an affidavit from Hung Vu. In the affidavit, Vu stated that he was the owner of Cozysign and Coolerprint.[4] Hung Vu Aff. ¶ 1, Infringement Case, Dkt. No. 35-1. On March 10, 2023, Ink & Rags filed a response to that motion stating that Hung Vu had informed Revision Legal that he owned DreBest but not Cozysign and Coolerprint. Pl.'s Consolidated Resp. to Defs.' Pending Mots. at 4–5, Infringement Case, Dkt. No. 49. Ink & Rags also stated that DreBest rents out its PayPal account to Cozysign, Coolerprint, and other businesses. *Id.* Ink & Rags made the same representations at a hearing on March 13, 2023. 3/13/2023 Hr'g Tr. at 5:8–7:4, 8:18–9:17, Infringement Case, Dkt. No. 115. On March 24, 2023, DreBest filed a motion for a declaratory judgment, seeking a declaration that the asset restraint did not apply to its PayPal account because it was distinct from Cozysign or Coolerprint, and it did not hold funds for those defendants or any others. Motion for Declaratory Judgment, Infringement Case, Dkt. No 74; (SAC at 5, ¶ 31).

The district court heard the motion to dismiss and the motion for a declaratory judgment at a hearing on March 29, 2023. DreBest, Cozysign, and Coolerprint all appeared through the same counsel, though DreBest remained a non-party. Ink & Rags was represented by Revision

[3] According to DreBest, "Ink & Rags and Revision Legal knew, however, that it had no rightful authority to direct PayPal to restrict the Account; it did so simply to attempt to damage DreBest's business, create leverage over DreBest, and extract an unwarranted settlement payment." (SAC at 5, ¶ 29.)

[4] DreBest alleges that "[a]t least as early as February 18, 2023, Defendants knew or should have known that Ink & Rags had no good faith basis for restricting the Account." (SAC at 5, ¶ 33.)

Legal. At the hearing, the judge expressed concern over Hung Vu's "dueling affidavits," which took inconsistent positions regarding DreBest's and Vu's relationship with Cozysign and Coolerprint. 3/29/2023 Hr'g Tr. at 6:12, Infringement Case, Dkt. No. 77. The motion to dismiss was denied without prejudice, and DreBest withdrew the affidavit attached to that motion claiming that Hung Vu owned Cozysign and Coolerprint. *Id.* at 6:15–17.

The district court then turned to DreBest's motion for a declaratory judgment. Ink & Rags reported that PayPal had linked DreBest to Cozysign and Coolerprint and therefore frozen DreBest's account, which contained about $1,000,000. *Id.* at 13:21–14:3. However, Ink & Rags was unsure how much of the $1,000,000 was Cozysign's or Coolerprint's; meanwhile, DreBest argued that none of the funds in the account were attributable to any defendant. *Id.* at 12:4–9, 15:17–16:1. Ink & Rags also suggested that DreBest may be liable as a "joint tortfeasor based on potentially aiding and abetting trademark infringement." *Id.* at 14:13–14; (SAC at 5, ¶ 32). Based on the record, the district court granted in part and denied in part DreBest's motion for a declaratory judgment. (*See* SAC at 5, ¶ 34.) Specifically, the district court found that a $1,000,000 restraint was too high, so it ordered that $400,000 be held in reserve and released any restraint on the remaining funds. 3/29/2023 Hr'g Tr. at 16:16–17:6. When DreBest repeated that "none of the funds in the PayPal account are the property of Cozysign or Coolerprint," the judge responded "[w]ell, apparently they have a URL that's connected. So that's a PayPal issue." (*Id.* at 18:10–13.) Following the hearing, the district court memorialized its ruling in a written order. Order Granting in Part and Denying in Part Non-Party DreBest's Motion for Declaratory Judgment, Infringement Case, Dkt. No. 79; (SAC at 5, ¶ 34). The order required $400,000 to be debited from DreBest's account, the "325 Account," and placed into a reserve account to be held until further order of the court.

However, PayPal did not immediately lift all restrictions on the 325 Account. "As of May 17, 2023, PayPal informed DreBest, without notice or an opportunity to respond, that 'Because of a potential risk exposure, we've permanently limited your account. You'll no longer be able to use the account for your transactions.'" (SAC at 6, ¶ 36 (emphasis omitted).) DreBest therefore filed a motion for contempt against PayPal, in which it reported that PayPal had restrained $800,000 in funds, rather than the court-ordered $400,000 restraint. Emergency Motion for Civil Contempt, Infringement Case, Dkt. No. 91. On May 30, 2023, the district court held a hearing and ordered that the restraint on the 325 Account be lifted, or else PayPal would be fined. 5/30/2023 Minute Entry, Dkt. No. 101.

On June 9, 2023, the district court held another hearing on the asset restraint. DreBest's counsel reported that Coolersign and Cozyprint had about $40 in infringing sales each. 6/9/2023 Hr'g Tr. at 13:8-11, Infringement Case, Dkt. No. 116. Based on this representation, the district court reduced the restraint to $100,000. *Id.* at 14:24–15:1 ("So what I'm going to do is I'm going to modify my preliminary injunction to keep in reserve $100,000—okay?—because I'm holding back too much money."). PayPal also appeared at that hearing and stated that any restraint left on the 325 Account existed pursuant to the PayPal user agreement, not the court's orders. (*Id.* at 4:24-5:14.) After the hearing, the district court entered an order "modif[ying] the Preliminary Injunction Order to keep in reserve $100,000" and releasing the "remaining $300,000 . . . from this Court's restraining order." 6/9/2023 Minute Entry, Infringement Case, Dkt. No. 107. Additionally, the district court "f[ound] that PayPal has complied with" the asset restraint orders, "vacated" its "order imposing a fine on PayPal for failure to comply," and denied DreBest's motion for contempt as moot. *Id.*

On November 28, 2023, Ink & Rags filed a joint stipulation to dismiss Cozysign and Coolerprint. Stipulation of Dismissal, Infringement Case, Dkt. No. 147. The stipulation did not mention DreBest. On December 22, 2023, DreBest filed a motion to unseal documents, in which it reported that it was "in the process of requesting disbursement of $100,000 still frozen in the PayPal account." Mot. to Unseal Docs. at 1, Infringement Case, Dkt. No. 153. The final entry in the docket is an order granting DreBest's motion to unseal. 12/27/2023 Minute Entry, Infringement Case, Dkt No. 154. On March 27, 2024, $100,000 of DreBest's funds in the account "remain[ed] restricted and inaccessible." (SAC at 7, ¶ 41.)

## II. The SAC

As a result of the restrictions on its account, DreBest's business drastically suffered. DreBest lost the ability to pay its 50 employees, 100 contractors, and "suppliers, advertisers, [and] landlord." (*Id.* at 7, ¶¶ 44–45.) As a result, "nearly all of DreBest's clients stopped doing business" with the company, and it became "insolvent and maintains only two surviving clients." (*Id.* at 7, ¶¶ 46–47.) Whereas DreBest had over $9,000,000 in revenue in 2022, it generated only about $380,000 in 2023. (*Id.* at 7–8, ¶¶ 48–49.) With "knowledge that maintaining the restrictions was crippling DreBest's business," "Ink & Rags and its counsel demanded that DreBest release any claims against Ink & Rags and its counsel in exchange for the release of the remaining $100,000 in the account." (*Id.* at 8, ¶ 50.)

To remedy its losses, DreBest filed this lawsuit against PayPal, Ink & Rags, and Revision Legal in the Circuit Court of Cook County. In Count I of the SAC, DreBest alleges that Ink & Rags violated the Illinois Consumer Fraud and Deceptive Trade Business Practices Act (the "Consumer Fraud Act"), 815 ILCS 505/2, by "conceal[ing] from PayPal that it had no legal basis for directing PayPal to restrain the Plaintiff's Account" and "fail[ing] to disclose to PayPal that the Account was not subject to restriction." (*Id.* at 9, ¶ 4.) In Counts II, IV, and V, DreBest

alleges that Ink & Rags and Revision Legal tortiously interfered with its relationship and contract with PayPal and its contracts with its clients. In Count III, DreBest alleges that Ink & Rags and Revision Legal committed malicious prosecution by "commenc[ing] and continu[ing] to prosecute the . . . Infringement Case and knowingly us[ing] that lawsuit as a pretext to restrict [DreBest]'s access to its PayPal Account." (*Id.* at 10, ¶ 15.) Count VI asserts a claim for negligence against Ink & Rags and Revision Legal based on their failure to "remedy the unwarranted restraint." (*Id.* at 13, ¶ 38.) And finally, Count VII alleges civil conspiracy against PayPal, Ink & Rags, and Revision Legal.

After this case was removed from state court, DreBest voluntarily dismissed PayPal with prejudice. (6/24/2025 Minute Order, Dkt. No. 29.) Meanwhile, Ink & Rags and Revision Legal (hereinafter, "Defendants") filed the instant Rule 12(b)(6) motion to dismiss. (Defs.' Mot. to Dismiss, Dkt. No. 15.)

**DISCUSSION**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Defendants raise several arguments for dismissal. First, they argue that the SAC should be dismissed because it contains misrepresentations that violate Federal Rule of Civil Procedure 11. Second, they contend that DreBest's factual allegations do not support a plausible malicious

prosecution claim. Finally, they raise multiple legal doctrines that would partially or entirely foreclose DreBest's claims. The Court addresses each ground for dismissal in turn.

## I. Federal Rule of Civil Procedure 11

As a threshold matter, Defendants argue that the SAC should be dismissed outright because its allegations "blatantly and intentionally misrepresent[]" orders and proceedings in the Infringement Case. (Mem. Supp. Defs.' Mot. to Dismiss at 11, Dkt. No. 16.) As described above, DreBest alleges that the TRO authorized Ink & Rags to "temporarily restrain the assets of the ***Defendants listed in Schedule A***" (SAC at 3, ¶ 19), and "[b]y its terms, the TRO applied only to 'Defendants' assets in [ ] Defendants' financial accounts'" (*Id.* at 3, ¶ 21). Meanwhile, Defendants point out that the TRO and preliminary injunction in fact directed PayPal and other payment providers to locate and restrain "all accounts and funds ***connected to*** Defendants." TRO ¶ 7, Infringement Case, Dkt. No. 21. They argue that DreBest's allegations, which omit the "connected to" language, are "plainly false, alleged in bad faith, and are an intentional misrepresentation of federal court orders." (Mem. Supp. Mot. to Dismiss at 13.)

Defendants contend that DreBest's alleged misrepresentations violate Rule 11(b)(3), which requires a pleading's proponent to ensure the document's factual contents have evidentiary support. Fed. R. Civ. P. 11(b)(3). "[I]t is well settled in this circuit that the ultimate sanction of dismissal should be involved only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable." *Rice v. City of Chicago*, 333 F.3d 780, 785–86 (7th Cir. 2003). Even if Defendants were correct that DreBest violated Rule 11, which the Court does not address, they have not shown that other less drastic sanctions are unavailable. And, in any case, the Court finds that dismissal is warranted on other grounds.

Moreover, Defendants have not met Rule 11's procedural requirements in making their request for dismissal. For a court to impose sanctions based on a Rule 11 violation, the sanctioned party must receive "notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1). Rule 11 therefore provides that "[a] motion for sanctions must be made separately from any other motion," and any such motion must be served on the opposing party at least 21 days before filing in court. Fed. R. Civ P. 11(c)(2). Defendants did not file a separate motion for sanctions; rather, the request for dismissal as a sanction is part of their Rule 12(b)(6) motion. And they have not shown that they gave DreBest 21 days' notice before filing their request. Thus, Rule 11's procedural requirements have not been met, and the Court declines to impose the "harsh sanction" of dismissal at this time. *Rice*, 333 F.3d at 786.

## II. Malicious Prosecution (Count III)

In Defendants' motion to dismiss, they argue that DreBest's malicious prosecution claim should be dismissed because, among other things, "[t]here is no support under Illinois law for [DreBest] bringing this claim when it was never a party to the" Infringement Case. (Mem. Supp. Mot. to Dismiss at 16.) In response, DreBest "agrees to voluntarily dismiss[]" its malicious prosecution claim. (Pl.'s Resp. at 5, Dkt. No. 30.) The malicious prosecution claim is therefore dismissed without opposition.

Indeed, even absent DreBest's voluntary dismissal, the malicious prosecution claim would be dismissed. "To state a malicious prosecution claim in Illinois, a plaintiff must plead (1) the commencement or continuation of an original criminal or civil proceeding by the defendant, (2) the termination of the proceeding in favor of the plaintiff, (3) the absence of probable cause for such proceeding, (4) malice, and (5) damages.'" *Stanley v. Santander Consumer USA, Inc.*, No. 20-cv-05823, 2022 WL 4329086, at *5 (N.D. Ill 2022).

Most importantly, it would not be possible for DreBest to plead a termination of the Infringement Case in its favor. "[A] favorable termination is limited to only those legal dispositions that can give rise to an inference of lack of probable cause." *Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1353 (Ill. 1997). As discussed above, the judge in the Infringement Case determined that the asset restraint applied to DreBest's account, despite being asked to hold otherwise. Specifically, the district court granted in part and denied in part DreBest's motion for a declaratory judgment, thereby sustaining the asset restraint but lowering it to $400,000. Several months later, the district court "modifie[d] the Preliminary Injunction Order to keep in reserve $100,000" because of evidence the restraint "concern[ed] only two defendants." 6/9/2023 Minute Entry, Infringement Case; 6/9/2023 Hr'g Tr. at 16:1–2, Infringement Case.

Thus, the district court never determined that DreBest's account was not properly subject to the asset restraint. To the contrary, it repeatedly rejected DreBest's argument that it should not be subject to the restraint. Tellingly, the SAC does not include even a conclusory allegation that the Infringement Case was terminated in DreBest's favor. (*See* SAC at 10–11, ¶¶ 14–19 (setting forth conclusory allegations as to every element of a malicious prosecution claim except a termination in DreBest's favor)); *Kay v. Boehm*, 336 N.E.2d 781, 782 (Ill. App. Ct. 1975) ("[T]he termination of a prior proceeding in favor of the plaintiff is an essential element in a cause of action for malicious prosecution which must be factually set forth in the complaint."). The district court's finding that asset restraints of $400,000 and $100,000 were proper as to DreBest cannot plausibly "give rise to an inference" that Defendants lacked probable cause in advocating for the asset restraint. *Cult Awareness Network*, 685 N.E.2d at 1353. Accordingly, the

malicious prosecution claim must be dismissed with prejudice, as its deficiencies cannot be cured by repleading.

## III. Consumer Fraud Act (Count I), Interference with an Economic Advantage (Count II), Tortious Interference with Business Relations (Count IV) and Business Contracts (Count V), Negligence (Count VI), and Civil Conspiracy (Count VII)

DreBest also asserts claims for violation of the Consumer Fraud Act (Count I), interference with an economic advantage (Count II), tortious interference with business relations (Count IV) and business contracts (Count V), negligence (Count VI), and civil conspiracy (Count VII). Defendants raise three arguments for the dismissal of these claims. Each of these arguments is an affirmative defense. A motion to dismiss based on an affirmative defense may only be granted when the plaintiff pleads itself out of court by alleging all facts required to establish the defense. *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009).

### A. Causes of Action Available to DreBest

Defendants' first argument relies on the "common law principle[]" in Illinois that "the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process." *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983) (citing *Lyddon v. Shaw*, 372 N.E.2d 685, 690 (Ill. App. Ct. 1978); *see also Ybarra v. Centrust Bank, N.A.*, 2024 IL App (1st) 232072-U, 2024 WL 5116641, at *6 (Ill. App. Ct. 2024) (unpublished order) ("Illinois recognizes only two causes of action, malicious prosecution and abuse of process, for the wrongful filing of a lawsuit."). "Save for these two claims, petitions to redress injuries resulting from alleged misconduct in judicial proceedings should be brought in the same litigation, not a separate suit before a new tribunal or judge." *Ybarra*, 2024 WL 5116641, at *6; *Johnson v. Johnson & Bell, Ltd.*, 7 N.E.3d 52, 57 (Ill. App. Ct. 2014) ("[T]here

is no civil cause of action for misconduct which occurred in prior litigation. . . . Petitions to redress injuries resulting from misconduct in judicial proceedings should be brought in the same litigation."). This principle derives from public policy considerations. Specifically, "[t]he courts have said that public policy precludes a second lawsuit because otherwise there would never be an end to litigation. It is also improper for a trial court to review previous litigation which has gone on before another judge." *Harris Tr. & Sav. Bank v. Phillips*, 506 N.E.2d 1370, 1377 (Ill. App. Ct. 1987). This principle applies here. And DreBest has failed to state a claim for abuse of process.

***1. Application of the Principle***

Defendants argue that DreBest seeks to redress injuries resulting from alleged misconduct in the Infringement Case, so it may state claims for only malicious prosecution or abuse of process. DreBest responds, without any citations to supporting authorities, that it "was not a party to the Infringement [Case]," and therefore "Defendants' misconduct occurred outside of the confines of the Infringement [Case]." (Pl.'s Resp. at 5.) This response does not withstand scrutiny. That DreBest was designated a non-party does not by itself mean that Defendants' conduct occurred outside the Infringement Case. To the contrary, the SAC's allegations almost exclusively describe actions Defendants took in litigating the Infringement Case. Defendants are alleged to have received an order for injunctive relief, served it on PayPal, represented to the district court that DreBest should be subject to it, and engaged in settlement communications with DreBest. Simply put, none of that conduct occurred "outside the confines of the Infringement Case." DreBest may have been a non-party, but it directly participated in the litigation by opposing the asset restraint in hearings and motions.

In *Ybarra*, the Illinois Appellate Court rejected tortious interference claims very similar to DreBest's claims here. Ruben Ybarra defaulted on a loan from Centrust Bank. *Ybarra*, 2024

WL 5116641, at *1. Centrust then sued Ybarra in the Circuit Court of Cook County and obtained a judgment against him. *Id.* Shortly thereafter, Ybarra's wife created various entities, including YRY Holdings, LLC, to make financial investments while avoiding the judgment entered against Ybarra. *Id.* Ybarra was a manager of YRY Holdings but not a member. *Id.* Centrust eventually returned to the circuit court and moved for a charging order against Ybarra's alleged interest in YRY Holdings. *Id.* at *2. This motion was based on Centrust's representation that Ybarra was a member of YRY Holdings. *Id.* After Centrust learned that Ybarra was not a member of YRY Holdings, it withdrew the motion. *Id.* Years later, Centrust filed a motion to appoints a receiver as to certain assets of YRY Holdings in order to collect on its judgment against Ybarra. *Id.* This motion, too, "falsely alleged that [Ybarra] was a member of YRY" Holdings, and was later withdrawn on that basis. *Id.* However, an asset restraint related to the motion had already been imposed, and Centrust refused to consent to its release. *Id.* Thus, "YRY [Holdings] was restrained from alienating, transferring, or selling the [assets]" because of Centrust's false representations as to Ybarra's stake in YRY Holdings. *Id.*

Ybarra, YRY Holdings, and a related entity then filed a separate suit against Centrust for tortious interference with contract and prospective business expectancy, based in part on the wrongful restraint of YRY Holdings's assets. The Illinois Appellate Court affirmed the trial court's decision to dismiss the complaint because "Illinois recognizes only two causes of action, malicious prosecution and abuse of process, for the wrongful filing of a lawsuit." *Id.* at *6. The court further found that the "complaint [was] wholly premised on communications and actions taken in" the previous litigation. *Id.* at *7. As the Illinois Appellate Court explained:

> Had plaintiffs wanted to seek redress for their injuries from alleged misconduct in [the prior case], it was incumbent upon them to do so using traditional motion or pleading practice and sanctions procedures in that case. The trial court was correct to dismiss

> plaintiffs' complaint for tortious interference and decline to review litigation which went on before another judge in [the prior case].

*Id.* (citing *Harris*, 506 N.E.2d at 1377; *Havoco*, 702 F.2d at 647).

Although the *Ybarra* decision is unpublished and nonbinding, it provides a strong indication of the treatment DreBest's claims would receive in Illinois court.[5] *See Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007) ("[W]hen the intermediate appellate courts of the state have spoken to [an open issue of state law], [federal courts sitting in diversity] shall give great weight to their determination about the content of state law, absent some indication that the highest court of the state is likely to deviate from those rulings."). Like YRY Holdings, DreBest alleges that it was wrongfully subjected to an asset restraint based on Defendants' false representations about its relationship with parties whose assets were the targets of a court-ordered restraint. DreBest then brought suit in the Circuit Court of Cook County, rather than bringing its claims in the litigation where it had already appeared for the purpose of litigating the asset restraint. Just as Ybarra and YRY Holdings were required to bring their grievances in the original case, so too was DreBest.

Indeed, DreBest's claims clearly implicate the policies underlying the common law rule against successive suits. For this Court to grant DreBest relief, it would have to review the judge's decisions in the earlier case to sustain the asset restraint throughout the several months that DreBest and Ink & Rags spent litigating it. Given that the prior judge determined that DreBest was properly restrained up to $400,000 (and later $100,000), ruling for DreBest would, at least to an extent, require this Court to contradict the prior judge's rulings. As Illinois courts

[5] Under Illinois Supreme Court Rule 23(b), the Illinois Appellate Court may dispose of certain cases by unpublished written order. Ill. S. Ct. R. 23(b). Such orders are generally "not precedential" but "may be cited for persuasive purposes" if entered on or after January 1, 2021. Ill. S. Ct. R. 23(e)(1). *Ybarra* is an unpublished order entered in December 2024. Therefore, it may be cited for persuasive purposes.

have recognized in limiting suits like DreBest's to malicious prosecution and abuse of process, it is "improper for a trial court to review previous litigation which has gone on before another judge." *Harris*, 506 N.E.2d at 1377. That DreBest originally filed its suit in state court does not change the application of this sound policy, as Illinois courts have applied it in declining to review federal courts' prior decisions. *See Johnson*, 7 N.E.3d at 57 (dismissing various tort claims based on the defendants' conduct in federal court proceedings, where neither the district court nor the Seventh Circuit "chose to assess sanctions," because "[t]he fact that neither [federal] court chose to assess sanctions . . . does not provide an adequate basis for a civil action in state court based on the same conduct").

Applying the common law rule here also serves the interest of preventing the continuous re-litigation of prior cases. Instead of filing a separate case, DreBest could have pursued several options for recourse in the Infringement Case. One of those options was to file a motion to release the restraint. In its motion for a declaratory judgment, DreBest did just that. Specifically, it sought "entry of an order declaring that the preliminary injunction . . . does not apply to DreBest or its PayPal account" because it was "not a [d]efendant," Ink & Rags "refused to direct PayPal to release the restrictions," and Ink & Rags's "claim that on February 18, 2023, Hung Vu informed its counsel that DreBest 'rented out' its PayPal account [was] false and intentionally misleading." Mot. for Declaratory Judgment at 1–2. That motion was granted in part and denied in part when the judge upheld the restraint but capped it at $400,000.

After the district court upheld the asset restraint in part, DreBest had multiple options for further recourse in the original proceedings. For one thing, it could have appealed the decision. *See Centurion Reinsurance Co. v. Singer*, 810 F.2d 140, 143 (7th Cir. 1987) ("[O]rders granting, denying, and modifying [preliminary] injunctions, are expressly made appealable by 28 U.S.C.

§ 1292(a)(1) regardless of finality."). Second, it could have moved to increase the injunction bond and later filed a motion to collect on the bond. *See* Fed. R. Civ. P. 65(c) (requiring that injunctive relief be "secur[ed] [by] an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained"); Fed. R. Civ. P. 65.1 (providing a mechanism for wrongfully restrained parties to file a motion to collect on the injunction bond).[6]

Third, DreBest could have filed a motion to intervene with a counterclaim in the Infringement Case against Ink & Rags. *See* Fed. R. Civ. P. 24(a)(2) ("On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest"); Fed. R. Civ. P. 24(b)(1)(B) ("On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."). Finally, DreBest could have moved for Rule 11 sanctions against Defendants based on their alleged bad-faith misrepresentations. However, DreBest availed itself of none of those options, and instead brought a new case in state court, essentially seeking to re-litigate determinations made in the prior case. Illinois public policy disfavors this course of action.

---

[6] A similar remedy is available under Illinois law. Under 735 ILCS 5/11-108, "[a] motion to dissolve an injunction may be made." If the motion is successful, the enjoined party may move for damages based on the wrongful restraint under 735 ILCS 5/11-110, but any such motion must be filed and decided before the court "finally dispos[es] of the action." 735 ILCS 5/11-110. By requiring motions for damages to be decided before a final disposition, this recovery scheme reflects the policy against successive suits about other suits. Similarly, 735 ILCS 5/11-103 provides that liability on an injunction bond "may be enforced on motion without the necessity of an independent action."

In short, because DreBest brought the present suit to "redress injuries resulting from alleged misconduct in" another case, it may only pursue claims for abuse of process or malicious prosecution. *Ybarra*, 2024 WL 5116641, at *6. The Court therefore dismisses DreBest's claims for violation of the Consumer Fraud Act (Count I), interference with an economic advantage (Count II), tortious interference with business relations (Count IV) and business contracts (Count V), negligence (Count VI), and civil conspiracy (Count VII). This dismissal is with prejudice because this deficiency cannot be cured through repleading.

### ***2. Abuse of Process and Malicious Prosecution***

As discussed above, DreBest cannot plead a plausible malicious prosecution claim. The question, then, is whether DreBest has stated a plausible claim for abuse of process. Although DreBest does not expressly list abuse of process as a cause of action in the SAC, it is well-established that complaints plead claims, not legal theories. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[W]e have stated repeatedly (and frequently) that a complaint need not plead legal theories.") The Court therefore considers whether DreBest has stated a plausible abuse of process claim in the SAC.

"Under Illinois law, the . . . elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Pace v. Timmermann's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 757 (7th Cir. 2015) (internal quotation marks and brackets omitted). "In order to satisfy the first element, a plaintiff must plead facts that show that the defendant instituted proceedings against him for an improper purpose, such as extortion, intimidation, or embarrassment." *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173 (Ill. App. Ct. 2004). "In order to satisfy the second element, the plaintiff must show that the process was used to accomplish some result that is beyond the purview of the process." *Id.* "The elements are

strictly construed, as the tort of abuse of process is not favored under Illinois law." *Id.* "'[P]rocess' [is] any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property." *Id.* at 1174.

The TRO and preliminary injunction entered in the Infringement Case constitute "process" because they were "means used by the court to acquire or to exercise its jurisdiction . . . over specific property"—namely, DreBest's PayPal funds. *Id.* at 1173–74. DreBest also alleges the first element of an abuse of process claim—the existence of an ulterior purpose or motive. Specifically, DreBest alleges that, although Defendants initially restrained DreBest's account by "mistake," they later developed the improper purpose of "damag[ing] DreBest's business, create[ing] leverage over DreBest, and extract[ing] an unwarranted settlement payment." (SAC at 5, ¶¶ 29–30.)

However, DreBest has not alleged the second element—an improper act in the use of process. That "element is the gravamen of the offense. . . . This means that even when someone with the most immoral motive initiates a proceeding, so long as the process is used for its intended purpose, that person cannot be liable for abuse of process." *Villarreal v. Arnold*, No. 16 CV 00603, 2016 WL 7374272, at *3 (N.D. Ill. Dec. 20, 2016) (citing *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 790 N.E.2d 925, 930 (2003)). Here, Ink & Rags put the courts' injunctive relief to its intended use—to restrain accounts "connected to" the defendants. The district court determined that the asset restraint properly applied to DreBest's account, and therefore, it cannot plausibly be alleged that Ink & Rags abused the TRO and preliminary injunction by refusing to voluntarily release the restraint. For this reason, DreBest fails to state a claim for abuse of process. *See Neurosurgery*, 790 N.E.2d at 930 ("When process is used only for its intended purpose, there has been no misapplication of process.").

### B. Absolute Litigation Privilege

The Court also finds that Illinois's absolute litigation privilege bars all of DreBest's claims besides malicious prosecution and abuse of process.[7] This privilege is "intended to further attorneys' need to fully and fearlessly communicate with their clients, as well as to promote the free flow of truthful information to courts." *Scarpelli v. McDermott Will & Emery LLP*, 117 N.E.3d 238, 245 (Ill. App. Ct. 2018) (citation omitted). "In essence, the absolute litigation privilege affords immunity to attorneys (and other participants in the judicial process) from tort liability arising out of statements made in connection with litigation." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998). "The only requirement for the application of the attorney litigation privilege is that the communication must pertain to proposed or pending litigation." *Scarpelli*, 117 N.E.3d at 246.

The privilege extends "beyond communications to include conduct performed within the practice of law, since attorneys typically do things—actions—in addition to communications in order to secure justice for their clients." *Id.* (citing *O'Callaghan v. Satherlie*, 36 N.E.3d 999, 1005 (Ill. App. Ct. 2015)). And it protects both attorneys and litigants. *See, e.g.*, *Loughnane v. Rogers*, No. 19 C 0086, 2019 WL 4242486, at *6 (N.D. Ill. Sept. 6, 2019) ("Under Illinois law . . . attorneys and private litigants enjoy an absolute privilege for defamatory statements made in the course of litigation."); *Johnson*, 7 N.E.3d at 57 ("A private litigant enjoys the same privilege concerning a proceeding to which he is a party.").

"Historically, the privilege was limited to defamation claims based on attorney communications, but in recent years, Illinois courts have extended it to . . . a variety of non-

[7] Given its finding that DreBest has failed to state claims for malicious prosecution and abuse of process, the Court does not analyze whether the litigation privilege bars those claims.

defamation torts." *Guzman v. Whole Food Market et al.*, No. 23 CV 16588, 2024 WL 6982230, at *2 (N.D. Ill. Oct. 17, 2024) (quoting *O'Callaghan*, 36 N.E.3d at 1009); *see Scarpelli*, 117 N.E.3d at 245–49 (finding that the absolute litigation privilege barred the plaintiffs' intrusion upon seclusion claim); *O'Callaghan*, 36 N.E.3d at 1009 (finding that the privilege barred the plaintiff's claims for intentional infliction of emotional distress and strict liability for ultrahazardous activity); *Johnson*, 7 N.E.3d at 56–57 (finding that the privilege barred claims for negligence, negligent infliction of emotional distress, and breach of contract). In extending the privilege to non-defamation torts, courts have emphasized that "[t]he absolute privilege would be meaningless if a simple recasting of the cause of action . . . could void its effect." *Johnson*, 7 N.E.3d at 56.

Illinois appellate courts have not expressly held that the absolute litigation privilege applies to claims for tortious interference or violations of the Consumer Fraud Act. However, numerous courts presented with these causes of action have applied the privilege. *E.g.*, *Mehra v. L. Offs. of Keith S. Shindler Ltd.*, No. 14-CV-7509, 2015 WL 1994749, at *3–4 (N.D. Ill. Apr. 29, 2015) (Consumer Fraud Act); *Shuffle Tech Int'l, LLC v. Sci. Games Corp.*, No. 15 C 3702, 2015 WL 5934834, at *16 (N.D. Ill. Oct. 12, 2015) (Consumer Fraud Act); *Creation Supply, Inc. v. Hahn*, 608 F. Supp. 3d 668, 697–98 (N.D. Ill. 2022), *aff'd sub nom. Creation Supply, Inc. v. Cherrie*, 61 F.4th 511 (7th Cir. 2023) (tortious interference with contract, where "Defendant attorneys allegedly interfered with their client's contract with the plaintiff through litigation (or litigation-related conduct and communications) about the contract"); *Toyo Tire Corp. v. Atturo Tire Corp.*, No. 2022-1817, 2024 WL 4404358, at *12–14 (Fed. Cir. Oct. 4, 2024), *cert. denied*, 145 S. Ct. 2750 (2025) (tortious interference and unfair competition). In fact, in an unpublished order, *Eagle Tr. Fund v. Miller*, 2022 IL App (5th) 210156-U, 2022 WL 3153534 (Ill. App. Ct.

2022), the Illinois Appellate Court held that claims for tortious interference with a prospective economic advantage and unjust enrichment were barred by the privilege. *Id.* at *7–8 (affirming trial court's application of the privilege where "the allegations in the complaint establish[ed] that the [attorneys'] conduct was related to then pending litigation and was committed in furtherance of the representation of their clients").

Here, all of Defendants' conduct alleged in the SAC is directly tied to communications and conduct by Revision Legal on behalf of Ink & Rags in the Infringement Action. Ink & Rags, through its attorneys, is alleged to have sought injunctive relief, served the district court's orders on PayPal, opposed removal of the asset restraint from DreBest's account, and leveraged the asset restraint in settlement discussions with DreBest. All of this alleged conduct related to the Infringement Case and furthered Ink & Rags's interests in the litigation. Therefore, DreBest's claims based on this conduct are barred by the litigation privilege. *See id.* at *8 (applying litigation privilege to claims for tortious interference, civil conspiracy, breach of fiduciary duty, unjust enrichment, and violations of the Illinois Trade Secret Act against attorneys who allegedly exceeded the scope of a TRO granted in prior litigation by misappropriating a database and sending it to third parties, because the attorneys' "conduct was related to then pending litigation and was committed in furtherance of the representation of their clients"); *see also Bedin v. Nw. Mem'l Hosp.*, 187 N.E.3d 739, 751 (Ill. App. Ct. 2021) (holding that litigation privilege barred claims for intentional infliction of emotional distress based on plaintiff's allegations that employees of the defendant-hospital stated, among other things, that (1) the defendant "had powerful attorneys that could destroy her," (2) the defendant "'would find things in her past' and 'if it failed to find things' in the past, defendant 'would fabricate such things and would make the resulting lies public," and (3) the defendant "would cause [the plaintiff's mother] to [be] placed

in a nursing home in South Chicago, and would leave her there until she died, and [the plaintiff] would not know [her mother] was dead until after the fact," because these statements and the related conduct were "related and pertinent to" guardianship proceedings).

Moreover, the claims based on this conduct essentially amount to defamation claims, which sit at the litigation privilege's core. In *Johnson*, the plaintiff alleged that the defendants, a corporation and its attorneys, disclosed her private information in a court filing they submitted in a prior case before the Northern District of Illinois. *Johnson*, 7 N.E.3d at 55. Based on this disclosure and the resulting harm, she brought claims for invasion of privacy, negligence, negligent infliction of emotional distress, and breach of contract. *Id.* The Illinois Appellate Court held that the litigation privilege barred the plaintiff's invasion of privacy claim because precedents had applied the privilege to that cause of action. *Id.* at 56. Next, the court extended the privilege to her remaining claims because "[t]he absolute privilege would be meaningless if a simple recasting of the cause of action . . . could void its effect," and the remaining claims amounted to a "recasting of a defamation claim." *Id.* at 56–57.

Here, DreBest's claims all revolve around allegations that Defendants falsely represented that DreBest was properly subject to an asset restraint under the terms of the district court's injunction orders. As alleged in the SAC, these representations occurred in court proceedings and written submissions, were made in furtherance of Ink & Rags's litigation interests, and were pertinent to the litigation. Thus, these statements and related conduct, such as serving the TRO on PayPal (SAC at 3–4, ¶ 22), must receive the protection of the privilege, whether cast as tortious interference, negligence, or fraud claims.

DreBest makes two arguments to oppose the privilege's application. First, it contends that, "[j]ust as [DreBest's] Malicious Prosecution claim cannot survive because . . . there was no

litigation between Defendants and [DreBest], so too the Defendants' attempt to rely on an 'absolute litigation privilege' must fail." (Pl.'s Resp. at 5.) However, as discussed above, the SAC makes clear that there certainly was "litigation" between DreBest and Ink & Rags, even if DreBest was never formally named as a defendant. In any case, "[t]here is no authority for the proposition that a party must be a party to the litigation for the absolute litigation privilege to apply." *Bedin*, 187 N.E.3d at 751.

Second, DreBest argues that "application of the [privilege] requires furtherance of an 'Illinois public policy,'" and "there can be no argument that using the courts to intentionally drive a business into the ground in a cynical attempt to extract a settlement payment, and then claiming the competitor and its attorneys are liars, furthers any public policy." (Pl.'s Resp. at 6.) This argument is unsupported by any citations to legal authority. *See Bedin*, 187 N.E.3d at 751 (rejecting the plaintiff's proposed limitations to the litigation privilege because she failed to support her arguments with authority). And contrary to DreBest's contention, it is well-established that "motives are irrelevant with respect to the applicability of the privilege," as is the challenged conduct's "reasonableness or unreasonableness." *Scarpelli*, 117 N.E.3d at 251; *see also O'Callaghan*, 36 N.E.3d at 1010 ("[M]otives and diligence before taking the challenged actions are irrelevant for purposes of the litigation privilege.").

And so, the absolute litigation privilege bars DreBest's claims based on the Consumer Fraud Act (Count I), tortious interference (Counts II, IV, V), and negligence (Count VI). The Court need not conclude whether the absolute litigation privilege bars the civil conspiracy claims. Because DreBest has failed to state a claim for any independent tort, it cannot state a claim for civil conspiracy. *540 N. Lake Shore Drive Condo. Ass'n v. MCZ Dev. Corp.*, 266 N.E.3d 1193, 1206–07 (Ill. App. Ct. 2025) ("Having affirmed the dismissal of the predicate tort

claims, the civil-conspiracy claim resolves itself. . . . If the 'plaintiff fails to state an independent cause of action underlying [the] conspiracy allegations, the claim for conspiracy also fails.'").

### C. Collateral Estoppel

For the sake of completeness, the Court addresses Defendants' final argument for dismissal: that collateral estoppel prevents DreBest from litigating claims related to the asset restraint in this litigation. They base their argument on Illinois's law of collateral estoppel. However, "[a]s the Seventh Circuit has repeatedly stated, '[w]here the earlier action is brought in federal court, the federal rules of res judicata apply.'" *Rymer Foods, Inc. v. Morey Fish Co.*, 116 F.3d 1482, at *5 (7th Cir. 1997) (unpublished table decision) (quoting *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1289 n. 4 (7th Cir. 1993)). Because the Infringement Case was filed in federal court, this Court applies federal collateral estoppel rules. Under federal law, collateral estoppel applies only if four elements are met: "1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action." *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 905–06 (7th Cir. 1990).

Here, no final judgment was ever entered against DreBest in the Infringement Case, as it was not a party to that case. Defendants argue that the dismissal of Cozysign and Coolerprint pursuant to a settlement agreement satisfies the requirement of a final judgment against DreBest. But even if the stipulation of dismissal counted as a final judgment against DreBest, the issue of whether DreBest was properly restrained was not "essential to the" stipulation, which concerned whether Coolerprint and Cozysign had infringed Ink & Rags's trademarks. Accordingly, collateral estoppel does not apply.

## CONCLUSION

Defendants' motion to dismiss (Dkt. No. 15) is granted. The Second Amended Complaint is dismissed in its entirety, with prejudice. The Clerk will enter final judgment in favor of Defendants.

ENTERED:

Dated: September 29, 2026

Andrea R. Wood
United States District Judge